Council you may proceed. Good morning. May it please the court, Anthony Suisugu for plaintiffs appellants who will call the owners. I'd like to reserve five minutes for rebuttal. This case is really about protecting the rights of property owners who purchased their units at Wailea Point, relying on protections that were expressly provided to them under the declaration. However, the district court's order endangers those property rights. The most consequential of those errors was the inappropriate application of the series qualifying canon. And even we're applying that series qualifying canon, the district court failed to find that a change from a 30-day minimum rental period to a 365-day minimum rental period did not qualify as a change in a fundamental restriction on the use of those apartments. I'm going to ask you a question. Let me ask you a question. When I read this language, section 10, it requires unanimous consent for amendments that affect a change in the fundamental purposes of or restrictions on the use of any apartment or the common elements, right? Correct. That's pretty... I don't see why we have to apply any canons. This seems to be pretty straight language. Absolutely, no problem. If you're going to need 100% if you're going to change the fundamental purposes of and you're going to have to have 100% if you change any of the restrictions on the use of any apartment or the common elements. If you don't do 100% in both of those situations, you can't change them. That's the straight language right there. Your Honor, I think we agree with that 100%. So they needed 100%? Correct. Yes, Your Honor. And furthering that point is the actual title of the section that we're talking about, is Article 7, which directly addresses the purposes of and the restrictions on the use of the apartment. I wonder in terms of this question of choosing which fork in the road we take, whether this is regardless of how we distribute the word fundamental, whether it's a purpose or use. I guess the first question is, are there other in terms of the structure of the rest of the agreement, so we're not just looking at a clause-bound view of just what these words mean, but in terms of what the entire agreement accomplishes. Can you point me to other examples of, I mean, you've argued that this deals with both, it could be a purpose or it could be a use. Where else in Section 7 would we find examples, similar examples of purposes or restrictions on the use that would be kind of used? I'm not sure that the agreement uses those phrases more than once with respect to similar issues. For purposes, I mean, it talks about residential purposes, the purposes of garage use for both boats and cars, those types of things. Section 7 also, and I understand that this applies directly to this case, but Section 7 also gives the absolute right to lease, so a use would be leasing. Right, but even that's, I mean, so just starting with Section 7a, it's an absolute right to lease subject to a time period. So that suggests that absolute doesn't mean absolute for as long as you want, it's absolute subject to the time period. The time period itself is spoken to for transient purposes. I guess, does that make it a purpose or a use? One of the things I'm just trying to figure out is like getting away from this sentence which may or may not be ambiguous. Other examples, I'm not sure the garage use is the best example because it refers to transient purposes. Yes, if I'm understanding your question correctly, transient purposes would be a, the leasing is the use of the apartment, and I guess a transient purpose would be a purpose. I mean, I think that's how there's a difference between a use and a purpose. A transient purpose lends itself more towards a commercial use versus the residential use of an apartment under a 30-day lease, for example. And is everything that you might do with the unit either a purpose or a use in the typology of this agreement? I mean, are there other rules that are neither purposes nor restrictions on uses? I also think that it's important to note that Article 7 does give the Association powers to enact other restrictions as long as it doesn't conflict with the declaration. I mean, I say this is a very basic question, but suppose they want to adopt a rule that like you can't hang beach towels over the railing. Is that a restriction on the use of the unit? It wouldn't be a restriction on the use of the unit that conflicts with the declaration. And then why is that? Because the declaration doesn't have a provision that expressly either allows or limits the use of a railing for hanging up. Wouldn't that still be a change in, that would be a restriction on use? And it would be, there isn't presently such a restriction in the agreement. So arguably it'd be a restriction on use. So it would be a change in the restriction on use. Yes. So the no beach towel rule has to, would require unanimity? No, because again, it doesn't, what we're, our position is that the, that Article 7 provides the Association with the right to make rules and regulations and restrictions as long as they don't conflict with the declaration. So as long as there is not something in the declaration that goes against that, they can make those types of restrictions such as a restriction on hanging a towel. Because that would be a restriction that they can put, could impose without requiring an amendment to the declaration. Correct. And what we're talking about in the context of all this, we have to remember that we're talking about an amendment to the declaration, which isn't just a small act. It doesn't, it's a lot more than just having the Association vote, you know, seven members or however many members there are voting, whether or not, you know, we think this is appropriate or not. So if in 7B, for example, which seems to be a one location for a series of restrictions and uses, the, the, it would take 100% if there were a rule adopted that would unreasonably disturb the rights of other owners and occupants, because that's a restriction on use that is listed in 7B?  Okay. I, I, I wonder, right, that's, that's, if, if I suspect that's subject to some dispute, in terms of what, if that's a restriction on use, and if we're treating this as a restriction on use, it does seem to be, at first glance, a pretty high bar. But why wouldn't the towel example be something that could disturb the right of, reduce the value of the property, increase the rate? I guess, right, when you're looking at 100% unanimity requirement, and we want to avoid that, that holdout problem with respect to condominium properties, can you give us some assurance that restriction on uses is not so broad that anyone can come in and say, well, wait a second, that conflicts with 7B? Well, there are protections within 7B that would prevent that. I mean, for any purpose which would injure the reputation of the property. Unreasonably disturbed, so there's a reasonable standard there. I mean, I understand these are arguments that could be made in order to try to enforce it on, on different things. But that's, I guess the point. Well, restriction on use is kind of the, I think the problem is, is a property in common, or properties such as this, or restrictions on use are kind of the name of the game in terms of the association, right? That's, that's usually what people are talking about in the common sense term. And so, if we understand restriction on use to, you know, apply, you know, broadly, right, restrictions on use that may conflict with this, then I worry about making, about that being a problem later on in terms of, you know, pets or, right, there's all sorts of arguments you can make under this. I would agree with that, but I, I think we need to focus on the question that's before the court. And the question before the court talks about a restriction on the use that is an absolute right as listed in the, and again, I'm not saying that they don't have the right to that leasing is an approved use, and they're fundamentally, or materially, or significantly placing restrictions on that. Well, let's go to purpose, I guess the purpose piece, because I think the timeline is a little bit closer to phrasing of purpose, right? This transient purposes, and the less than 30 consecutive days seems to be more associated with a purpose. How do we draw the fundamental, non-fundamental line with respect to purposes? You can imagine the kind of slippery slope questions I could ask about everything between 31 and 364. Yes, and again, I would go back to, there would have to be a, there would have to be a declaration amendment in order to get there. I know before the district court, it went through a whole gamut of whether it was a day, if it changed it by a day, or a second, or all of that. But again, that would never happen because you're going to have to have a declaration amendment to get to that point. And so I don't think getting into that hypothetical is exceptionally helpful here. I mean, I'm happy to engage in that. But I mean, I guess I have a sort of related question, which is wondering on your reading, what work is the word fundamental doing? So I mean, can you give us an example of anything that would be a non-fundamental or a change in purposes, but not a change in the fundamental purposes? Off the top of my head, I mean, I'm not sure if it's a change in a purpose from, I'm not sure, a car garage to a boat garage. I mean, it's still housing equipment of some sort, but it wouldn't necessarily fundamentally change what that particular thing is doing. Or when you talk about residential use, whether it be extremely long-term residential use or year-long residential use, I think there could be changes in the degree of what that residential use is. That would be a purpose as opposed to a fundamental change in that purpose. You wanted to reserve some time. Thank you, Your Honor.  Good morning, Your Honors. May it please the Court, I'm Andrew Salinger. I represent the Association of the Wiley Point Village, including the directors that were sued by the plaintiffs. This appeal concerns a narrow question of contract interpretation. The declaration permits amendments by a 67 percent supermajority and reserves unanimity only for amendments affecting fundamental changes to the purposes or use of apartments. You're paraphrasing there, and you're paraphrasing in a way that makes carrying the word fundamental across both nouns sound a lot better than it does in the actual agreement, where we have two very different kinds of phrases on opposite sides of the or, right? So it's fundamental purposes of or restrictions on the use of. And so why shouldn't we apply the rule that you don't carry the modifier across two sort of syntactically disparate phrases on opposite sides of a disjunctive? Sure, Judge Miller. So the series qualifier canon, what we're looking at is there's a parallel construction. So purposes and restrictions are both plural. They both have the same preposition. So purposes of restriction on the use of. Well, the letter has two prepositions, right? I mean, it's got a noun and then a prepositional phrase and then the of, right? So it's not parallel in that sense, is it? I believe it is parallel because it has the same construction in terms of the word of following the noun. And there's one adjective that qualifies or distributes then to both nouns in that sentence. What would a fundamental restriction on the use of an apartment be? A fundamental restriction. As opposed to a restriction on the use. So 7b contains a list of restrictions on the use. What would a fundamental restriction on the use of? The fundamental restriction on a residential apartment is it is to only be used as someone's domicile, to be a residence. And as the Hawaii short-term rental case, we've cited it for different purposes. But what I cited it for is when the court looked at and analyzing short-term rentals and noted that the duration doesn't change the use. The use is still being used as a domicile. Someone's living there. It's residential. That's the fundamental use. Other restrictions that the association can pass would be a restriction on use such as like Judge Miller gave of putting out towels on the balcony. Let me ask you a little bit. Let me interrupt. Why is it I'm using a qualifier or all of these ideas to try to determine whether fundamental goes across to modify restrictions or use or whatever when I can read the language and it's clear meaning and I don't need to use any qualifier? I don't need to use any, if you will, series qualifier or all of that. I just say there's a fundamental purpose of, there's a restriction on the use of, and fundamental doesn't even come across in the plain language of the section 10. Why do I even have to get to fundamental? Why does it have to go across? It's plain. Fundamental only talks about purposes. It doesn't say or fundamental restrictions. It doesn't say anything about that. Why do I have to use the qualifier? It seems to me the only time the qualifier or the canons would be involved if this is ambiguous language. I don't believe that's the rule. The canons only are applied when we have ambiguity. And if we have no ambiguity, we don't apply those canons at all, do we? I believe the series qualifier canon, it's not something that arises only with ambiguity. That's what's been argued. That's what you argued in the court below, that this was ambiguous. So we had to determine what to do with the canons. No, I did not, Your Honor. I've argued the whole time that, and I disagree with, obviously, your interpretation in terms of fundamental not distributing. Well, I understand you might disagree with that.  I'm just trying to figure out when do I apply these canons and when I don't. I do, I mean, I read all the big treatises about this, and usually the canons come in when there's an ambiguous language. But if I determine as a court that it's not ambiguous at all, I wouldn't even have to think about the canons, would I? That's true, Your Honor. I would just note that this canon, specifically the series qualifier, has been said that it's nothing... Where was it said? It's nothing complex beyond the fact that it's how we normally apply it. Where was that said? Even if it was said, where is it said such that I can go read it? If I find this to be clear and unambiguous language, fundamental doesn't modify restrictions in the least in what I read here. Where do I read that I have to apply the canons at all? Seems to me the only place I read in all these treatises, including Judge Scalia's, is when it's ambiguous. I... Well, first off, the Sylvester case we cited has adopted this qualifier. And as I'm saying, it's not that you're having to apply anything special here. This is how we read and speak in everyday language. And if there's any question... Because in Hawaii, we're obviously applying Hawaii's substantive law to this contract interpretation. And in Hawaii, we interpret all parts of the contract to give it a meaning. And in here, as has been noted by the district judge, it's an argument I've made several times, but you need to look at the policy behind the statute in the Condominium Property Act. And in my addendum 001 to my brief, I have 514B-10, subsection B, that talks about a declaration shall be liberally construed to facilitate the operation of the condominium property regime. The interpretation, Judge Smith, that you're giving would not facilitate the operation of the condominium regime. Why wouldn't it? Because if they want to restrict people putting a towel on a bar and then suddenly 100% of the people have to... Well, I don't have to have the towel on the bar. What I've got in this particular situation is the increase of the... or the decrease, I guess, of the chance to rent one's property. When in first place, they could rent it easily when it's one level and the other... In the next instance, it decreases... It eliminates the opportunity to rent at all. When Hawaii is a condominium place where everybody comes for two weeks or three weeks, but they don't come for a year, and what you're really saying is from there on, this language with only 60% of the condominium owners telling the other residents you can't rent anymore. Completely consistent with how Hawaii condominiums are set up. Kukui Plaza case, you give up the freedom of choice when you enter into this type of cooperative living environment. Would it be consistent with the absolute right to lease to pass by short of unanimous voted 99-year lease restriction? Sorry, to the... So this is just the flip side. I'm taking the over on the hypothetical, the slippery slope. So 366 days to 99 years. When does it become fundamental? I'm not going to fight the hypothetical like I did in front of the district judge. I've thought about this a lot, and I acknowledge that at a certain point, there would be an argument that there's a fundamental change. Because if you extend the duration of that restriction so much that you're fundamentally altering and taking away the concept of leasing, 99 years, essentially someone's life, now you can only do it one time. So that's something I've never acknowledged before. But in thinking about this hypothetical more, I think there is a point. It's not before the court to decide that in this case. And it's clearly not one year. 30 days, one year. These are typical ways that people lease their property. It's not unreasonable. It's an incremental change. It's a durational change. It's not a fundamental change. I guess on the fundamental piece, the risk of taking us off of this, do you have other examples of, in Section 7, what would be an alteration to a fundamental purpose? Which terms would speak to fundamental purposes, if not the transient purposes clause? From Section 7, no. And a lot of discussion from my friend has been made about the title. Well, then what does fundamental purpose refer to? It refers to the categorical use of property. So you're putting a boat in it instead of your family, or vice versa. Correct. And where would we, right, so paragraph 2 of Section 7 speaks to that, but is it a fundamental purpose, whether or not I have a workbench in my condo? A darkroom? No, it's not. And that's my point of what I was trying to say, is Section 7 does not list a whole list of fundamental purposes. These are just other restrictions that are in this declaration. The fundamental purposes are to use a residence as a residence, to use a car garage as a car garage. And I accept that 365 days is a substantial change from 30 days, but the declaration does not ask whether the change is substantial. It asks whether the change is fundamental to the purposes or use of the apartment. Well, so it doesn't quite ask that. And because this goes back to a point Judge Johnstone made earlier, which is fundamental, fundamental makes sense as a modifier for purposes. Like we can talk about purposes being fundamental or not all the time. And throughout this discussion, we've said a lot about, you know, fundamental changes, fundamental alterations. Like those make sense grammatically, too. But the way you need to read the agreement for your position to work is that it refers to fundamental restrictions. And that seems kind of unidiomatic. We talk about a restriction can be, you know, severe or mild, but isn't it kind of odd to talk about a fundamental restriction? Yes, I see that, Judge Miller. I mean, residential units remained residential units before the amendment and after the amendment. Leasing was permitted before and after the amendment. The declaration had already drawn a line between permissible and impermissible leasing. And the amendment simply moved that line. Well, what if those are... So there may be a world in which everything you've just discussed are purposes. Whereas 7B is speaking to restrictions on uses. Do you agree with your friend's reading that we should take Section 10 to, you know, which says, requires consent affecting a change and the restrictions on use of any apartment or common elements, that that's only triggered not by sub-declaration rules that might restrict uses, but only sub-declaration rules that effectively amend or conflict with the declaration? Right, so in other words, the towel example or any number of different uses, right? So the Board adopts what might be called a restriction on use. And I take your friend's point is that the reason we don't have to worry about of reading a unanimity requirement for any sort of rule or regulation concerning the use of a condominium, separate from fundamental purposes, is because the declaration kind of only cares about restrictions on uses that are equivalent to nuisance, safety issues, etc. I disagree. And I can, so in other words, a reading that no towels on balconies is affecting, is a restriction on the use, it's not fundamental, would require 100%? Absolutely not. I'm sorry, I keep coming back to the fact that the fundamental applies to the restrictions on use. And it would be unworkable. Does fundamental apply, modify restrictions or use? It modifies restrictions on use of. So it doesn't modify use of, it just modifies restrictions on the use of? Restrictions on the use of. And so you'd say that 7b, for example, is a list of fundamental restrictions on the use you can't use it for nuisances or safety violations, or change the amount of insurance, for example, you have on it. I do not view the uses identified in section 7 as fundamental uses. Well, what uses are fundamental then? We just had this discussion about purposes, but I'm trying to, if not using your property in such a way that it serves as a nuisance to your neighbors is a fundamental restriction on the use. What is? The fundamental restriction on the use is that it be used for residential use. But that's, you're going back to purposes, right? So they can't do them as one and the same. That they're one and the same. Yes, similar to when someone would speak about rights and responsibilities. Purposes are things that you're allowed to do. Restrictions are things you're not allowed to do. Yes. The thing that worries me is, is that we keep changing from fundamental restrictions to fundamental use. And I looked at this trying to really look at what you're trying to say, even if I apply fundamental. Do I apply it to restrictions? Or do I put just fundamental use? So are we have fundamental restrictions on any use? Or do we have restrictions on only fundamental uses? And you told me, oh, this is only fundamental restrictions. Okay. Then I tried to find, well, what's a fundamental restriction? You won't agree with what he thinks a fundamental restriction is. And I, frankly, don't know what one is. And how does it differ from any other restriction? And therefore, why does fundamental apply at all? Why fundamental applies is? If I don't know what a fundamental restriction is. It's back to, I'm sorry to repeat myself, but it's back to the character of the use of the property. And whether it's being leased. Now we're back to use again. We're not talking about fundamental restriction now. You're talking about a use. You're saying any. Well, that's the worry that I have. Well, the problem that I have here is that right now this declaration says the tenants have absolute right to the lease the apartment subject to transient use restriction. That's what it says.  And the amendment gives a 12-fold increase in the minimum lease term. Correct, your honor. So this eliminates all of the apartment owner's ability to engage in any short-term or medium-term lease, right? Correct, your honor. So if the right to lease is a fundamental use, and how can I say, how can we find that the more burdensome transient use restriction is not a fundamental restriction on the use? Because the restriction already existed in the declaration. It was already there. The transient one was.  But let me tell you, count 12-fold increase in what it is, how can I say that's not a fundamental restriction? And you shouldn't have to have 100% of the homeowners. It's not a fundamental change. It's a durational change. And both before and after. And eliminates all the short-term and mid-term leases. Those aren't protected rights under the declaration. Well, the declaration says they have an absolute right to lease subject to a transient use. And now we're trying to decide. That's why I keep asking you about, isn't this clear? This doesn't even relate. We got a clear language here. I'm not clear what you're asking. It doesn't relate. But if I'll go to the absolute right to lease, does not what we're talking about. Absolute right to lease is the ability to lease to who you want to lease. And the restriction on the use being that you cannot lease for transient purposes has always been in the declaration, remains part of the declaration. When you purchase a condominium and you know you're giving up freedom of choice, you understand that that duration might change. Now, there might be a point, as I acknowledge in the hypothetical, where that durational change is so long that you're basically frustrating what it is to lease. But that's not the case before you. One year is not a frustration. I'm sorry. I'm out of time.  Thank you very much.  You know, if we take the interpretation that appellees are trying to take, they want to emphasize one word fundamental, but not allow or not follow the second clause, which is restrictions on the use of. So what this court should do is give effect to the words of the drafters, give deference to the drafters of the declaration. I guess what's odd about that and looking at the title of Section 7 is it is just this clause that we're wondering about with the word fundamental tagged on the front. It's odd that the agreement itself contemplates a pair of purposes of and restrictions on the use of in Section 7 and then what Clause 10 does is add fundamental to the front of that entire. So doesn't that cut the other way in terms of this being an integral clause? What our position would be is that that fundamental only applies to the purposes of and you asked earlier what would be a purpose or a change in purpose that isn't a change in a fundamental purpose. So for example, this also applies to common elements. So if they change the purpose of a tennis court to a pickleball court, that could be a change of a purpose that wouldn't necessarily be a fundamental purpose. But I could imagine great debate over that. The quote unquote fundamental purpose of it being for the exercise or what have you of the tenants remains the same. The fundamental purpose of that area. And then the other part of it that, you know, again, if you read Article 7 that cuts for us is that Article 7 itself specifies certain things that require 67% vote. And if the drafters didn't intend Article 7 to require unanimous consent, why would they then section out other sections that require that 67%, which arguably by the appellees argue that 67 would apply to basically all of that. And then just lastly, touching on that towel conversation that we had, a rule restricting towels, it would be hard to find that that would be against the safety of the condominiums or a nuisance. It would actually have to be a rule that forces a towel out there that arguably would violate maybe safety nuisance, reduce the value or increase insurance costs. And so I think it wouldn't necessarily apply that type of slippery slope doesn't apply unless there's a rule forcing something that could cause injury to the condominium project itself. But if there's no other questions. It appears not. So thank you. Thank you very much. We thank both Council for their helpful arguments and the cases submitted. And we are adjourned for the day and the week. All rise.
judges: SMITH, MILLER, JOHNSTONE